(77 Misc. Rep. 538.)

**PEOPLE ex rel. SNELL v. SNELL.**

(Supreme Court, Equity Term, Monroe County. September 16, 1912.)

1. PARENT AND CHILD (§ 2\*)—CUSTODY OF CHILD—RIGHT TO.

    At common law the father is entitled to custody of his minor children, to the exclusion of any other person; but under Domestic Relations Law (Consol. Laws 1909, c. 14) § 70, custody may be awarded to either parent, though the father has a paramount right, other things being equal.

    [Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 4–32; Dec. Dig. § 2.\*]

2. PARENT AND CHILD (§ 2\*)—CUSTODY OF CHILD—RIGHT TO.

    On separation of husband and wife through the latter's fault, the husband has a paramount right to the custody of girls 9 and 14 years old, respectively, where he has great affection for them and superior ability to care for and educate them; the wife being properly permitted to have access to the home to see her children, and to remain there if she will.

    [Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 4–32; Dec. Dig. § 2.\*]

Application by the People of the State of New York, on relation of Percy E. Snell, against Nellie Snell, for the custody of two minor children. Judgment for relator.

Salisbury & Agate, for relator.
Edwin C. Redfern, for respondent.

CLARK, J. The relator is the husband of the respondent, their marriage having taken place in 1897. They have two children, both daughters; the eldest, Beryl E. Snell, being now 14 years of age, and the other daughter, Gladys E. Snell, being 9 years of age. Both children have resided with their parents, who lived together from the date of their marriage until about August 12, 1912, when the respondent left her husband's home in the town of Bristol, Ontario county, and went to reside with her relatives in the city of Rochester, taking both children with her. Since that time the relator has repeatedly requested his wife to return and live with him, which she has refused to do. The parties had for a considerable time prior to July, 1912, resided in Rochester, where they own two houses, the record title thereof being in the wife; but whatever equity they have in said properties was paid for by the husband, the relator. He has always supported his family comfortably and according to his means and station in life. The respondent has no means of her own, except as above stated; but her brother resides in Rochester, and is a man of some means, and is willing to support and maintain the wife and children.

Respondent, on the very lengthy hearing of this case, which consumed about four days, and covered every detail of the married life of the parties, sought to justify her course in leaving her husband by claiming that he had sustained improper relations with a lady who had been a near neighbor while they lived in Rochester, and who made a visit at their farm in Bristol for a short time in the summer of 1912. The evidence absolutely fails to justify the wife in her accusations of crim-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

inal relations between her husband and this woman. Indeed, it hardly justifies even a suspicion on the part of the wife that there was anything improper between her husband and this lady. There was nothing in the evidence to show that this lady and the relator had ever been together in the absence of other persons for a single minute, and the fact that respondent for some unknown reason developed a jealousy of this other woman affords no sufficient reason why she should make the charges testified to in this proceeding. It was unworthy to seek to smirch the reputation of a lady whose character, so far as the evidence discloses, is above reproach.

The wife, on one occasion in the summer of 1912, assaulted the mother of relator, throwing dishwater in her face and repeatedly slapping her. On the hearing she admitted that she could not tell why she did it, only that she thought there was something in the old lady's looks which indicated that something was wrong, and that she was in a plot to do away with the respondent. The assault was wholly unjustifiable, as respondent practically admitted on the stand. Whatever reasons respondent may have had for leaving her husband were not disclosed by any satisfactory evidence in this case. Her attempted explanation of why she did it affords no just and sufficient reason why she should abandon her husband and break up his family. The evidence shows that her course was unjustifiable and arbitrary, and this case must be disposed of on the evidence, and not upon sentiment or sympathy for either party.

The husband and wife are equally fit custodians of their children, so far as their moral standing and affection are concerned. The father has always supported his family comfortably, and is able and willing to do it. He is a man in perfect health, and capable of earning considerable money each year; whereas the wife has no particular financial ability and if the custody of the children was awarded to her, their support would depend entirely upon the generosity of her relatives. There has been no legal separation between the parties. The wife thought that her husband was unfaithful to her, and she left him, taking her children; but the evidence does not show that she had any good reason or justification for her suspicions. If she had any such evidence, or reasons to justify her course, such evidence should have been produced on the trial. Only in the spring of 1912 the husband took his wife for a two months' trip to Florida for rest and recreation, and she admitted that he was kind to her and that they were perfectly happy. There is no evidence that he ever assaulted her, or used extremely harsh language toward her, or that he was ever unkind to his children. On the contrary, it appears beyond question, that he was a kind and affectionate husband and father, able and willing to support his family according to his means and station in life.

[1] Under the common law the father had the legal right to control his minor children, and was entitled to their custody absolutely, to the exclusion of any other person. This rule has been modified by subsequent legislation, and now after due consideration the court may award the custody of a minor child to either parent. Domestic Re-

lations Law (Consol. Laws 1909, c. 14) § 70. But, other things being equal, the husband has a paramount right to such custody, because he is primarily charged with the duty of supporting his family. As I understand it, the rule is that the husband is regarded in law as the head of the family, and, other things being equal, is entitled to the care and custody of his children, he being charged with the duty of their maintenance and support. The father's paramount right to the custody of his children, which has always been recognized, should not be interfered with by the court, unless the best interests of the minor children require that the custody be given to another.

[2] The children of these parties are not infants. If they were, the paramount right of the father to their custody would, of course, have to yield to the claims of the mother; but where, as in this case, the children are not infants, requiring the daily and perhaps hourly ministrations of the mother, but are girls of 9 and 14, respectively, there is no reason why the right of the father to their custody should be interfered with, unless he is morally or financially an unfit and improper person therefor. The evidence does not disclose any such situation here. Each of the parents has the greatest affection for the children; but the father is able and willing to care for them in a perfectly respectable home, and see that they are properly educated. The wife, being without sufficient means, would be unable to do this, excepting through the charity of her relatives. Under these circumstances the court would not be justified in taking from the father the custody of the children he is bound to support and protect, and awarding it to the mother, who left him without sufficient cause, and persists in her refusal to return to him after he has repeatedly requested her to do so.

It is not necessary to rehearse in detail the difficulties and little bickerings, and perhaps hasty words that have been spoken, between these parties, which preceded the separation. It is proper to say, however, that both parties were apparently equally to blame for the situation prior to the time they moved on the farm, but after that the wife was in the greater fault for insisting on entertaining suspicions of her husband's fidelity, when she could not by any evidence show facts which justified such suspicions. The time has not yet come when a wife is warranted in assuming that any little courtesy a husband extends to another lady, and especially a neighbor and friend of the family, amounts to criminal intimacy between them.

The relatives of this wife have been unduly officious in this matter, and it was highly improper for any of them to seek to influence the elder daughter against her father by promises of fine clothing and a collegiate education. This unfortunate domestic difficulty is but another tragedy in the lives of a husband and wife often seen in court, largely brought about by the activities of meddlesome relatives, which have resulted in the breaking up of a home. Nothing has occurred between these parties, as shown by the evidence, to render it either impossible or difficult for them to live together in peace and happiness, if they will exercise a little charity, and make an honest effort to per-

form their duties, and not be too exacting with reference to their rights.

The relator testified that he was willing and able and anxious to support his wife and children, and to educate the latter, and wants them to return to him. It is the wife's duty under the circumstances to return to her husband's home, and there fulfill her obligations as a wife and mother, and if at any time she should be ill-treated by her husband the court would afford her a speedy and effectual remedy.

Under the circumstances the prayer of the relator should be granted, and the custody of the children in question be awarded to the father, the mother at all times to have free access to his home to see her children, and to remain there if she will, the mother to be notified of any change in the residence of the children. No costs allowed.

Ordered accordingly.